IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAYNESVILLE SHALE RENTALS, LLC, and ELITE COIL TUBING SOLUTIONS, LLC, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-12-0860 |
| TOTAL EQUIPMENT AND SERVICE, INC. and AXON WELL INTERVENTION PRODUCTS INC., a/k/a AXON ENERGY PRODUCTS, INC., a/k/a AXON EP, INC., | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Plaintiffs' Motion for Award of Costs and Attorneys' Fees Associated with Service of Process upon Defendant Axon Well Intervention Products, Inc. (Document No. 10), and Defendant Total Equipment and Service, Inc.'s Motion to Dismiss (Document No. 13). After carefully considering the motions, responses, reply, and the applicable law, the Court concludes as follows.

## I. Background

Plaintiffs Haynesville Shale Rentals, LLC ("Haynesville") and Elite Coil Tubing Solutions, LLC ("Elite," and collectively, "Plaintiffs") bring this action to collect damages allegedly caused

by the failure of a coil tubing unit that Haynesville purchased from Defendant Total Equipment and Service, Inc. ("Total") and leased to Elite.[1] Total allegedly manufactured the coil tubing, and Axon Well Intervention Products, Inc. ("Axon") allegedly manufactured the pump, which together comprised a coil tubing unit used in the oil and gas industry. Plaintiffs allege that the pump failed repeatedly and that they returned the unit to Defendants for repair, but that ultimately the unit had to be removed and replaced. Plaintiffs allege redhibition based on implied warranties, violations of Louisiana Unfair Trade Practices Act ("LUTPA")[2] under Louisiana law; Deceptive Trade Practices Act ("DTPA")[3] claims under Texas law; and breaches of implied and express warranty, products liability, negligence, gross negligence, recklessness, imprudence, and want of skill claims under both states' laws.[4]

---

[1] Document No. 1 ¶¶ 3, 4, 13-21; Document No. 16 at 6. Plaintiff Haynesville is "a Louisiana oilfield equipment company." Document No. 16 at 6. Elite is "a Louisiana oilfield services company which provides coil tubing and related services." Id.

[2] LA. REV. STAT. § 51:1401 *et. seq*.

[3] TEX. BUS. & COM. CODE § 17.01 *et. seq*.

[4] Plaintiffs allege causes of action under both Louisiana and Texas law. Total asserts that Texas law should apply; Plaintiffs, on the other hand, argue that the choice of law question is a fact-intensive inquiry that should be determined later. At this preliminary stage it seems appropriate to await at least some factual development of the case before making choice-of-law determination. *See, e.g.*, Floyd v. CIBC World Markets, Inc., 426 B.R. 622, 641 (S.D. Tex. 2009) (Atlas, J.) (declining to decide

Total moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiffs have not pled facts sufficient to state claims for which relief may be granted.

## II. Motion to Dismiss

### A. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a

---

choice of law on a motion to dismiss because "[t]he Court lacks evidence at this stage of the proceedings to properly analyze all the Restatement factors"). Thus, each cause of action as pled under each state's law will be examined in ruling on Defendant's motion.

complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

B. Louisiana Claims

1. Redhibition

Louisiana Civil Code article 2520 provides a cause of action for the breach of implied warranty against redhibitory defects. Hollybrook Cottonseed Processing, LLC v. Carver, Inc., No. 09-0750, 2010 WL 2195685, at *2 (W.D. La. May 28, 2010) (citing LA. CIV. CODE art. 2520). "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." LA. CIV. CODE ANN. art. 2520 (West 1996). "In a redhibitory action, the plaintiff need only prove that the product

contained a hidden vice at the time of the sale, not apparent by ordinary inspection, which subsequently renders the thing unfit for the use intended or that its use became so inconvenient or imperfect that it must be supposed that the purchaser would never have purchased the product had he known of the vice or defect." Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660, 662 (La. 1975).

Here, Plaintiffs allege that Haynesville purchased the coil tubing unit including the component pumps from Total, that the pumps and coil tubing unit were defective, that these defects existed at the time of the sale and were concealed such that Plaintiffs did not know of the defects, and that, if it had known of the defects, Haynesville would not have purchased the coil tubing unit with the pumps.[5] Plaintiffs further allege that Total manufactured and sold the coil tube unit, Axon designed and manufactured the pumps as the unit's component parts,[6] Plaintiffs placed the coil tubing with the defective pumps in service, and the pumps and coil tubing failed.[7] Plaintiffs further claim that they returned the coil tubing unit for repair, but it failed again and had to be permanently removed from service and replaced with a

---

[5] Document No. 1 ¶¶ 32-42.

[6] Id. ¶¶ 32, 38.

[7] Id. ¶ 39.

different unit that functioned properly.[8] Taking the pleadings in the light most favorable to the Plaintiffs, Haynesville has stated a redhibition claim against Total, as seller, and Total and Axon as manufacturers of the allegedly defective coil tubing unit and its component parts.[9]

2. Products Liability

Under Louisiana law, the Louisiana Products Liability Act ("LPLA") "establishes the exclusive theories of liability for manufacturers for damages caused by their products." LA. REV. STAT. ANN. § 9:2800.52 (West 2009). To state a claim under the LPLA against a manufacturer of a product, a plaintiff must plead facts to indicate: "[1] that the defendant is a manufacturer of the product;[10] [2] that the claimant's damage was proximately caused by

---

[8] Id. ¶¶ 38-40.

[9] Elite, as a lessee only, does not assert a claim in redhibition. *See* Alvis v. CIT Grp./Equipment Financing, Inc., 2005-0563 (La. App. 3 Cir. 12/30/05); 918 So.2d 1177, 1184-85 ("[B]ecause the transaction at issue is not a sale, the redhibition articles do not apply as between the plaintiffs and the defendants."). In their complaint, only Haynesville seeks damages under redhibition. *See* Complaint ¶¶ 41-42.

[10] The LPLA defines a "manufacturer" as: "(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product; (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage; (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer; and (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product

a characteristic of the product; [3] that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and [4] that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 245 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997) (citations omitted). The "four ways" to show that the product was unreasonably dangerous are: "(1) defect in construction or composition; (2) defect in design; (3) inadequate warning; or (4) failure to comply with an express warranty." Wells v. Gen. Elec. Co., No. 08-0079, 2008 WL 2026112, at *1-2 (W.D. La. May 8, 2008) (citing LA. REV. STAT. ANN. 9:2800.54(B)(1-4)). Here, Plaintiffs allege that the product was unreasonably dangerous because: (1) there was a defect in construction or composition; (2) there was a design defect; and (3) Defendants failed to warn.

Total challenges the sufficiency of Plaintiffs' pleadings because they do not plead the particular reason for the defect--*how* the product was defective, but Plaintiffs do allege that "the pumps were incapable of handling the capacity as claimed by defendants and the design of the pumps was defective and the pumps were not properly constructed." This is sufficient notice pleading pointing to a defect in the coil tubing unit to allege a right to relief

---

for resale and the seller is the alter ego of the alien manufacturer." LA. REV. STAT. 9:2800.53(1)(a)-(d).

"above a speculative level." Twombly, 127 S. Ct. at 1964-65. Likewise, with respect to Plaintiffs' alleged failure to warn claim that the product "possessed characteristics that may result in failure in the unit and pumps," which could cause damage to the pumps, other unit components, and to the unit as a whole.[11] It is understandable that Plaintiff may not be able to specify those characteristics in the unit and pumps without technical investigation and discovery, but Defendant is put on fair notice that those characteristics presented themselves to the purchaser of the unit in failures of the unit and pumps to perform.[12]

---

[11] Document No. 1 ¶ 55.

[12] Total also contends that the economic loss rule should apply to bar Plaintiffs' LPLA claims because they allege damage only to the product itself, relying on Tucker v. Petroleum Helicopters, Inc., 2008-1019 (La. App. 4 Cir. 3/23/09); 9 So.3d 966, 974. Tucker was brought under general maritime law, not Louisiana products liability law, *see* id. at 969-70, and the court allowed the plaintiff to supplement his maritime claim with a redhibition claim because "it is by its very nature a warranty claim" which did not conflict with maritime law. Id. at 972. It appears that Louisiana law does not recognize the economic loss rule under the LPLA. *See* Brookshire Bros. Holding, Inc. v. Total Containment, Inc., No. 04-1150, 2006 WL 2792249, at *4 (W.D. La. Sept. 26, 2006) ("For those injuries that occurred in Louisiana, there is no economic loss rule. Louisiana law provides for full recovery and full reparation for a plaintiff under Louisiana's Civil Code articles 2315, 2520 *et. seq.*, and the LPLA. Thus, the economic loss rule does not apply to those injuries that occurred in Louisiana.") The text of the LPLA contemplates recovery under that statute under some circumstances when the damage is limited to the product itself. *See* LA. REV. STAT. § 9:2800.53 ("'Damage' includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,' does not allow recovery for such damage or economic loss."). Therefore, to the extent that either or both of

3. Other Louisiana Claims

"Courts have consistently held the LPLA subsumes all possible causes of action, with the exception of a claim in redhibition." Touro Infirmary v. Sizeler Architects, 2004-2210 (La. App. 4 Cir. 11/21/06); 947 So.2d 740, 744; Jefferson, 930 F. Supp. at 244-245 ("While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer . . . . Further, breach of implied warranty or redhibition is not available as a theory of recovery for personal injury, although a redhibition action is still viable against the manufacturer to recover pecuniary loss."). Plaintiffs' claims for breach of express warranty, negligence, gross negligence, imprudence, and lack of skill are thus precluded by the LPLA. *See* Jefferson, 930 F. Supp. at 245. In addition, Plaintiffs' claims under LUTPA, which are brought under the same facts as their products liability claims and claims for redhibition, are also precluded by the LPLA. *See* Bladen v. C.B. Fleet Holding Co., 487 F. Supp. 2d 759, 770-771 (W.D. La. 2007) (finding that, as here, "the plaintiffs' petition unquestionably alleges [defendant's]

---

Plaintiffs may be unable to recoup their economic losses under redhibition, the LPLA may allow them to recover.

liability is couched as a *manufacturer* of a defective *product under the LPLA*," and therefore the LPLA's exclusivity provision applied (emphasis in original));[13] Cantu v. C.B. Fleet Holding Co., Inc., No. 2:06 CV 2168, 2007 WL 689566, at *2-3 (W.D. La. Mar. 1, 2007) (finding that plaintiff's claims under LUTPA, implied warranty of merchantability, implied warranty of fitness for a particular purpose, negligence, and misrepresentation, *inter alia*, are all precluded by the LPLA); *see also* Bracey v. C.B. Fleet Holding Co., Inc., No. 06-3238, 2006 WL 3733808, at *2 (E.D. La. Dec. 15, 2006) (rejecting plaintiffs' argument that they should be able to pursue claims under LUTPA and stating that "the exclusivity of the LPLA is well-established in both the statute and its attendant case law"). Accordingly, Plaintiffs' claims under Louisiana law, except for their claims under the LPLA and redhibition, will be dismissed for failure to state a claim for which relief may be granted.

C. Texas Claims

1. Express Warranty

Plaintiffs allege that Defendants breached express and implied warranties in the sale of the subject coil tubing unit. "The

[13] Bladen further observed that "the legislature, with full knowledge of the LUTPA, unquestionably enacted the LPLA statutory declaration of exclusive liability in the LPLA and made no exception for the LUTPA," even though the LPLA expressly exempted claims for redhibition. 487 F. Supp. 2d at 767.

Uniform Commercial Code provides that an express warranty is created when '[a]ny affirmation of fact or promise [is] made by the seller to the buyer which relates to the goods and becomes part of the *basis of the bargain*.'" Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 677 (Tex. 2004) (citing TEX. BUS. & COM. CODE § 2.313(a)(1)) (emphasis added). "'Basis of the bargain'" loosely reflects the common-law express warranty requirement of reliance." Id. Accordingly, Plaintiffs must plead that Defendants made some affirmation of fact or promise upon which Plaintiffs relied. Here, Plaintiffs allege generally that Defendants made express warranties through written materials on websites. However, Plaintiffs have not pled *what* the express warranties were or *how* they were breached, nor have they alleged that they relied on any particular express warranty as the basis for their bargain. For these reasons, neither Plaintiff pleads sufficient facts to state a claim for breach of express warranty.

2. Implied Warranties of Merchantability and Fitness

"The elements of a cause of action for breach of the implied warranty of merchantability are as follows: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury." Equistar Chemicals, L.P. v. Dresser-Rand Co., 240 S.W.3d 864, 867 (Tex. 2007) (quoting

Polaris Indus. v. McDonald, 119 S.W.3d 331, 336 (Tex. App.--Tyler 2003, no pet.)). "Under a claim of warranty of merchantability, there must be a showing that there was a defect which rendered the goods 'unfit for ordinary purposes for which they are used.'" Jeep Eagle Sales Corp. v. Mack Massey Motors, Inc., 814 S.W.2d 167, 173 (Tex. App.--El Paso 1991, writ denied) (citations omitted). Plaintiffs have sufficiently pled a viable claim for breach of implied warranty of merchantability under Texas law.

An implied warranty of fitness for a particular purpose arises when "the seller, at the time of the transaction, has reason to know of the particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Chandler v. Gene Messer Ford, Inc., 81 S.W.3d 493, 503 (Tex. App.--Eastland 2002, pet. denied). The "particular purpose," however, must be a particular non-ordinary purpose. *See* id. Plaintiffs do not plead any facts suggesting that either Defendant had reason to know of some particular non-ordinary purpose for which Plaintiffs intended to use the coil tubing unit. Accordingly, Plaintiffs do not state a claim for breach of implied warranty for fitness for a particular purpose.

3. Products Liability and Negligence Claims

Plaintiffs allege that the coil tubing unit completely broke down, could not be repaired, had to be replaced, and cost them

economic losses in the form of business interruption and replacement costs. Plaintiffs do not allege that they (or anyone else) suffered physical injury or harm to property other than to the product itself. They therefore cannot recover in a products liability claim under Texas law. *See* Equistar Chemicals, L.P. v. Dresser-Rand Co., 240 S.W.3d 864, 867 (Tex. 2007) ("The economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." (citing Nobility Homes of Texas, Inc. v. Shivers, 557 S.W.2d 77, at 79-80 (1977); Signal Oil & Gas Co. v. Universal Oil Prods., 572 S.W.2d 320, 325 (Tex. 1978))). "[W]here only the product itself is damaged, such damage constitutes economic loss recoverable only as damages for breach of an implied warranty under the [Business and Commerce] Code." Signal Oil, 572 S.W.2d at 325.

The economic loss rule also applies to Plaintiffs' negligence claims in Texas. In Sharyland Water Supply Corp. v. City of Alton, the Texas Supreme Court explained:

> A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. *Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.*

354 S.W.3d 407, 415-16 (Tex. 2011) (emphasis added) (quoting Seely v. White Motor Co., 403 P.2d 145, 151 (Cal. 1965)). Accordingly, Plaintiffs' claim, which alleges no damage other than economic harm, is a claim properly brought as a breach of implied warranty of merchantability under the Uniform Commercial Code. Plaintiffs' alleged products liability or negligence-related claims are therefore dismissed for failure to state a claim upon which relief can be granted under Texas law.

4. DTPA

A consumer may maintain an action under the Texas DTPA where the breach of an implied warranty is a producing cause of economic damages. TEX. BUS. & COM. CODE § 17.50(a)(2)). Here, Plaintiffs allege that they are consumers with assets totaling less than $25 million, which comports with the statutory definition of a consumer. *See* TEX. BUS. & COM. CODE § 17.45(4). They also allege, as observed above, a viable claim for breach of the implied warranty of merchantability. "A breach of an implied warranty may give rise to a DTPA claim even though the DTPA does not create any warranties." Slentz v. Am. Airlines, Inc., 817 S.W.2d 366, 368 (Tex. App.--Austin 1991); Elliott v. Kraft Foods N.A., Inc., 118 S.W.3d 50, 58 (Tex. App.--Houston [14th Dist.] 2003) ("[A] consumer may recover under the DTPA for breach of an implied warranty that

is a producing cause of economic damages. . . ."). Accordingly, Plaintiffs' DTPA claim survives dismissal.

III. Motion for Costs and Fees

Plaintiffs move for costs and attorneys' fees associated with serving Defendant Axon. Rule 4(d)(2) provides:

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

FED. R. CIV. P. 4(d)(2). Axon does not deny that it failed to comply with Plaintiffs' request for waiver of service of process, and did not respond until after its insurer determined to provide a defense and it had been served with process.[14] This does not constitute good cause. *See* FED. R. CIV. P. 4(d)(2) Advisory Committee note on 1993 Amendment ("A defendant failing to comply with a request for a waiver shall be given an opportunity to show good cause for the failure, but sufficient cause should be *rare*." (emphasis added)).

Axon challenges some of the time claimed by Plaintiffs' attorney for fees attributed to arranging service. "Plaintiffs are entitled to recover the *expenses* incurred in making service" but

[14] Document No. 14 at 2.

not "entitled to recover their legal fees incurred in obtaining service." Rick's Cabaret Int'l, Inc. v. Indem. Ins. Corp., No. H-11-3716, 2012 WL 208606, at *4-5 (S.D. Tex. Jan. 24, 2012) (citing FED. R. CIV. P. 4(d)(2)(A)); Maranto v. Dillard Nat'l Bank, 230 F.R.D. 478, 479 (W.D. La. 2005) ("Fees incurred in connection with attempts to make service or obtain a waiver do not fall within the scope of [Fed. R. Civ. P. 4(d)(2)'s] language.") (citing Morales v. SI Diamond Tech., Inc., No. 98-CIV-8309 CSH, 1999 WL 144469, at *3 (S.D.N.Y. Mar. 17, 1999)); D'Agostine v. United Hosp. Supply Corp., No. Civ. A. 96-168, 1996 WL 417266, at *4-5 (E.D. Pa. July 23, 1996)); *see also* Wilson v. Louisiana, No. 10-3338, 2011 WL 1527065, at *2 (E.D. La. 2011) (finding that attorney's fees attributable "to the preparation of the motion and supporting papers . . . is the only component of counsel's time that is compensable under Rule 4").

After review of the parties' back and forth submissions, which reflect an unusual amount of time and effort to argue an issue that good counsel--which the attorneys in this case would appear to be--should have been able to agree upon in a single telephone call,[15] the Court finds that Plaintiffs are entitled to recover from Axon the Plaintiffs' expenses incurred in making service and their

[15] Plaintiffs in their motion do not claim even to have called or contacted Axon's counsel to request reimbursement of their Rule 4(d)(2) expenses before spending a lot of time and expense to file this motion.

reasonable expenses, including reasonable attorney's fees incurred in moving to collect its service expenses, in the total amount of $400.00, which sum Axon shall remit to Plaintiffs within fourteen (14) days after the date of this Order.

## IV. Order

For the reasons set forth above, it is hereby

ORDERED that Defendant Total Equipment and Service, Inc.'s Motion to Dismiss (Document No. 13) is GRANTED in part with respect to all claims brought under Louisiana law are DISMISSED for failure to state a claim except for claims alleged (i) under LPLA and (ii) for redhibition; and Plaintiffs' products liability and negligence-related claims brought under Texas law are DISMISSED. It is further

ORDERED that Total's motion is also GRANTED as to Plaintiffs' claims under Texas law for breach of express warranty and for implied warranty for fitness for a particular purpose, and those claims are DISMISSED, but Plaintiffs are granted leave within fourteen (14) days after the date of this Order to file an Amended Complaint in the form of a more definite statement to plead facts, if they can do so consistent with FED. R. CIV. P. 11(b), to state a claim under Texas law on those two causes of action only; and Total's motion is otherwise in all things DENIED.

If Plaintiffs replead as permitted above, for purposes of clarity they shall separately state their Louisiana claims that survived above and their Texas claims that survived above and that may be repled as permitted by this Order.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 12TH day of October, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE