```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


HAYNESVILLE SHALE RENTALS, LLC,   §
and ELITE COIL TUBING             §
SOLUTIONS, LLC,                   §
                                  §
        Plaintiffs,               §
                                  §
v.                                §    CIVIL ACTION NO. H-12-0860
                                  §
TOTAL EQUIPMENT AND SERVICE,      §
INC. and AXON WELL                §
INTERVENTION PRODUCTS INC.,       §
a/k/a AXON ENERGY PRODUCTS,       §
INC., a/k/a AXON EP, INC.,        §
                                  §
        Defendants.               §
```

MEMORANDUM AND ORDER

Pending is Defendant Axon Well Intervention Products, Inc.'s Motion for Summary Judgment (Document No. 74), and Defendant Total Equipment and Service, Inc.'s Motion for Summary Judgment (Document No. 75). Plaintiffs have filed no responses to these motions, and they are therefore deemed unopposed pursuant to Local Rule 7.4.[1] After carefully considering the motions and applicable law, the Court concludes as follows.

---

[1] On December 2, 2013, the Court granted the Unopposed Motion to Withdraw as Counsel filed by Plaintiffs' counsel, and ordered Plaintiffs to cause an attorney to file an appearance as counsel of record in their behalf within twenty days. Document No. 70 at 1-2. Withdrawing counsel was ordered to advise Plaintiffs that their failure to substitute new counsel "may result in a judgment being entered against" them. Id. at 2. Plaintiffs have not complied with the Court's Order, and remain unrepresented.

I.  Background

Plaintiffs Haynesville Shale Rentals, LLC ("Haynesville") and Elite Coil Tubing Solutions, LLC ("Elite," and collectively, "Plaintiffs") brought this action to collect damages allegedly caused by the failure of a Double Fluid Pumper Unit ("the Unit") that Haynesville purchased from Defendant Total Equipment and Service, Inc. ("Total") and leased to Elite.[2] Total allegedly acquired the component pumps for the Unit from Defendant Axon Well Intervention Products, Inc. ("Axon," and together with Total, "Defendants"). Plaintiffs allege that the pumps failed repeatedly and that they returned the Unit to Defendants for repair, but that ultimately the Unit had to be removed and replaced. Plaintiffs allege redhibition based on implied warranties and violations of the Louisiana Products Liability Act under Louisiana law, and Deceptive Trade Practices Act ("DTPA") and implied warranty of merchantability claims under Texas law.[3] Defendants move for summary judgment.

---

[2] Document No. 1 ¶¶ 3, 4, 13-21; Document No. 16 at 6. Plaintiff Haynesville is "a Louisiana oilfield equipment company." Document No. 16 at 6. Elite is "a Louisiana oilfield services company which provides coil tubing and related services." Id.

[3] Plaintiffs' other claims under both Texas and Louisiana law were dismissed by Orders dated October 12, 2012, and February 25, 2013. Document Nos. 30, 44.

## II. <u>Summary Judgment Standard</u>

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. <u>Id.</u> "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." <u>Id.</u> "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." <u>Id.</u> 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III. <u>Discussion</u>

Defendants file separate Motions for Summary Judgment, but advance the same basic arguments: (1) Plaintiffs' Louisiana claims should be dismissed because Texas law governs Plaintiffs' claims; (2) Haynesville explicitly waived its implied warranty of merchantability claim; (3) the DTPA does not apply to this dispute; and (4) Defendants are entitled to attorneys' fees under the DTPA.[4]

A.   <u>Choice of Law</u>

"In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law

---

[4] Document Nos. 74, 75.

rules of the forum state." Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 403 (5th Cir. 2004) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 61 S. Ct. 1020, 1021 (1941)). Texas courts apply the "most significant relationship" test, found in the Restatement (Second) of Conflict of Laws (1971), to determine choice of law in all cases, except contract cases where the parties have agreed to valid choice of law clauses. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420-21 (Tex. 1984). Section 6 of the Restatement describes the general principles relevant to the choice of law analysis: the needs of the interstate and international systems; the relevant policies of the forum and other interested states; the relative interests of other interested states; the protection of justified expectations; the basic policies underlying the field of law; certainty, predictability and uniformity; and ease in the determination and application of the law. Restatement (Second) of Conflict of Laws § 6. In analyzing these general principles as applied to tort claims, courts consider: the place of injury; the place of the conduct causing the injury; the domicil, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship between the parties is centered. Id. § 145. "In the absence of an effective choice of law by the parties," courts consider the following principles when applying the Section 6 principles to contract claims: the place of contracting; the place of negotiation; the place of performance;

5

the location of the subject matter of the contract; and the domicil, residence, nationality, place of incorporation and place of business of the parties.  Id. § 188.

Texas law controls Plaintiffs' claims.  Plaintiffs' contractual claims against Total are governed by a Texas choice of law clause found in Total's Terms and Conditions sheet, which states:

> Any sale or agreement to sell Goods or Services shall be interpreted according to the laws of the State of Texas, excluding any provision thereof that would direct the application of the laws of another jurisdiction.  Buyer agrees that any sale of or agreement to sell Goods or Services will be deemed to be made and performed solely in Hood County, Texas to the exclusion of all other jurisdictions.[5]

The parties agreed that Total's Terms and Conditions applied to Plaintiffs' order.[6]

---

[5] Document No. 75, ex. A-3.

[6] See id., ex. A-1 (Commercial Proposal stating that "Total Equipment and Service 'Terms & Conditions' apply to all orders."); id., ex. A § 10 (Declaration of Doyle Harrington, Total's Equipment Sales Manager, stating "I, on behalf of Total, created a Commercial Proposal for the two identical double pumpers.  Total provided this proposal, along with Total's Terms and Conditions and Warranty Policy, to [Elite General Manager Weldon Guillory].  As stated in the Commercial Proposal, we agreed that these Terms and Conditions and this Warranty would apply to the purchase of the Double Pumper."); id., ex. B at 24:19-25:19 (Guillory's deposition testimony stating that he received Total's Terms and Conditions with the proposal and that he purchased the equipment pursuant to Total's terms).

Furthermore, the relevant Restatement factors demonstrate that Texas has the most significant relationship to all of Plaintiffs' claims. Total's principal place of business is in Granbury, Texas,[7] and Plaintiffs allege that Axon's is in Houston, Texas.[8] Plaintiffs reached out to Total in Texas to purchase the Double Fluid Pumper Unit, and Elite General Manager Weldon Guillory visited Texas multiple times to monitor the order.[9] Total manufactured the Unit in Texas,[10] and Axon manufactured the component pumps in Texas.[11] Plaintiffs came to Texas to pick up the Unit.[12] The Unit was mostly used in Texas,[13] and all repairs were

---

[7] Id., ex. A ¶ 3.

[8] Document No. 1 ¶ 5.

[9] Id. ¶ 4 ("In March 2010, Plaintiffs reached out--through their then-employee/representative Weldon Guillory--to Total to purchase two double-pumper units."); Document No. 75, ex. B at 21:15-22:5 (Guillory's deposition testimony stating that he first contacted Total via phone and set up an appointment to meet at Total's Granbury, Texas facility, and thereafter made two to three trips a month there to "check the equipment and make sure that the specifications that we had was being done.").

[10] Document No. 75, ex. A ¶ 3.

[11] Id., ex. F at 293:17-18.

[12] Id., ex. A ¶ 16.

[13] James Hardy, owner of Haynesville and Elite, testified as follows:

> Q: How far out did you guys go and do your work? Is it all in Texas, Louisiana? Where's all the work being done?
>
> A: South Texas.

performed in Texas.[14] Finally, Plaintiffs chose a Texas forum for their suit.

The only factors suggesting Louisiana's interest in the case are that Plaintiffs are Louisiana companies,[15] that "somebody" from Axon made a single trip to Louisiana during the repair efforts,[16]

---

    Q:    Most all in South Texas?

    A:    Basically right now.

    Q:    What about with this double pumper, did it mostly work in Texas?

    A:    Right, East Texas. East Texas and down around Natchitoches[, Louisiana].

Id., ex. E at 305:11-21

[14] Id., ex. F at 293:25-294:2.

[15] Document No. 1 ¶¶ 1-2.

[16] Chad Bowers, Axon's Chief Information Officer, testified as follows:

    Q:    Okay. And it sounds like all these repairs or the majority of them were done in Texas, also?

    A:    All of them were.

    Q:    And I think there was maybe at some point down this line in sort of the history of the repair efforts somebody from Axon went out to Louisiana? Is that one trip out there?

    A:    That was one trip that I'm aware of, and that was those two bolts for the - - the silicon.

    Q:    Okay. And that was the only time anyone from Axon ever went to Louisiana?

    A:    I believe so.

and that the Unit was used in "East Texas and down around Natchitoches[, Louisiana.]"[17] These are not sufficient to overcome the weight of the factors pointing to Texas as the forum with the most significant relationship to this dispute. Accordingly, Texas law applies, and Plaintiffs' Louisiana claims are dismissed.

B.  Implied Warranty of Merchantability

Defendants argue that Haynesville's breach of implied warranty claims must be dismissed because both Total and Axon effectively disclaimed any implied warranty of merchantability.[18] Under Texas law, the implied warranty of merchantability may be disclaimed in a conspicuous writing that mentions merchantability. TEX. BUS. & COMM. CODE § 2.316(b) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous."). A writing is conspicuous if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."  Id. § 1.201(b)(10).  Language in the

---

Document No. 75, ex. F at 293:25-294:11.

[17] Id., ex. E at 305:17-21.

[18] Document No. 74 at 14-17; Document No. 75 at 14-17. Plaintiffs' Complaint appears to advance the breach of implied warranty claim only on behalf of Haynesville. Document No. 1 ¶¶ 32-42. To the extent Elite advances a similar claim, it is barred for the same reasons.

body of a form is conspicuous if it is, "in larger type than the surrounding text, or in contrasting type, font, or color." Id.

Total's Terms and Conditions contain the following language:

> 13. WARRANTY: To the extent that Goods are warranted by their original manufacturers, and to the extent that such warranties are assignable to Buyer, Seller assigns to Buyer any rights and remedies it has relating to such Goods. Seller further agrees to perform any obligations of the original manufacturer under the manufacturer's warranty to the extent that such manufacturer authorizes Seller to perform such warranty obligations. **SELLER WARRANTS GOODS MANUFACTURED AND SERVICES PERFORMED BY IT PURSUANT TO THE WARRANTY POLICY STATEMENTS ISSUED FROM TIME TO TIME BY SELLER. EXCEPT AS SET FORTH IN THE APPLICABLE WARRANTY POLICY STATEMENT, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO GOODS OR SERVICES, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**[19]

Total's disclaimer is written in all capital letters and in bold type expressly disclaims any "express or implied . . . warranty of merchantability." *See* Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp., 844 F.2d 1174, 1183 (5th Cir. 1988) (language printed in all capital letters in warranty article of

---

[19] Document No. 75, ex. A-3 ¶ 13 (emphasis in original). Additionally, Total's Warranty Policy states that it is "in lieu of all other warranties, express or implied, including merchantability or fitness for a particular purpose." Id., ex. A-2. The Bill of Sale also contained disclaimer language. Id., ex. A-5 ("In connection with the described trailer, seller expressly disclaims all warranties, either express or implied, including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose.").

contract was conspicuous and disclaimed the implied warranty of merchantability).

Axon also produces a conspicuous disclaimer. A manufacturer cannot rely on a retailer's disclaimer of implied warranties, but can disclaim on its own behalf in the materials it includes with the goods. Clark v. DeLaval Separator Corp., 639 F.2d 1320, 1323-24 (5th Cir. 1981). The summary judgment evidence is that Axon's Terms and Conditions were relayed to the consumer,[20] and included the following language:

> This warranty is EXCLUSIVE AND, EXCEPT AS STATED HEREIN, [AXON] MAKES NO EXPRESS OR IMPLIED WARRANTIES AS TO ANY MATTER WHATSOEVER INCLUDING, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR USE, WHICH EXCEED THE FOREGOING WARRANTY.[21]

Axon's disclaimer, unlike the majority of the text on the page, is written in all capital letters and expressly disclaims any implied warranty of merchantability on behalf of Axon. Accordingly, Plaintiffs' breach of implied warranty of merchantability claims are dismissed.

C.  <u>DTPA Claims</u>

Plaintiffs' DTPA claims fail because total consideration for the purchase at issue exceeds the statutory limit. The DTPA does

---

[20] *See* Document No. 74, ex. D at 4 of 12.

[21] <u>Id.</u>, ex. D at 12 of 12.

not apply to "a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000." TEX. BUS. & COMM. CODE § 17.49(g). Plaintiffs paid $917,500 for the Double Fluid Pumper Unit.[22] Accordingly, Plaintiffs' DTPA claims are dismissed.

D. <u>Attorneys' Fees</u>

Defendants argue that they are entitled to attorneys' fees under Section 17.50(c) of the DTPA, which provides:

> On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

A claim is 'groundless' if it has no basis in law or fact, and is not warranted by any good faith argument for the extension, modification, or reversal of existing law. <u>Donwerth v. Preston II Chrysler-Dodge, Inc.</u>, 775 S.W.2d 634, 637 (Tex. 1989). As observed above, Plaintiffs' DTPA claim is precluded by express statutory language proscribing claims relating to transactions of more than $500,000, and--because Plaintiffs well knew or should have known that the consideration they paid exceeded the statutory sum for a

---

[22] Document No. 75, ex. A ¶ 11; <u>id.</u>, ex. A-4; <u>id.</u>, ex. I at 68:10-13.

DTPA claim--the Court finds the claim was groundless in fact and law. Defendants are entitled to attorneys' fees under the DTPA. *See* Alcan Aluminum Corp. v. BASF Corp., 133 F. Supp. 2d 482, 501, 506 (N.D. Tex. 2001) (DTPA claim was groundless and defendant was entitled to attorneys' fees where it was undisputed that plaintiff was a business consumer with assets in excess of $25 million, and thus was explicitly excluded from bringing claims under the DTPA).

Defendants support their requests for attorneys' fees with affidavits listing the total amount of fees billed to date, and a general list of activities on which those fees were expended, but make no effort to segregate the amount of time spent on Plaintiffs' DTPA claim.[23] Inexplicably, Defendants assert that it is "impossible to segregate" time spent on the groundless DTPA claim from their time spent on Plaintiffs' other claims because "all of Plaintiffs' claims are interrelated through identical alleged facts."[24] However, claimants "have always been required to segregate fees between claims for which they are recoverable and claims for which they are not," and "intertwined facts" between such claims are an insufficient basis for bypassing the segregation

---

[23] Id., ex. J (Affidavit of Total's attorney stating attorneys' fees incurred to date are approximately $378,000); Document No. 76 (Supplemental Affidavit of Axon's attorney stating attorneys' fees incurred to date are $128,470.74, and that those fees are based on a billing rate of $185 per hour for attorney time and $50 per hour for paralegal time).

[24] Document No. 74 at 25; Document No. 75 at 21.

requirement. <u>Tony Gullo Motors I, L.P. v. Chapa</u>, 212 S.W.3d 299, 311-313 (Tex. 2006).

Regardless of however much Plaintiffs' claims may have been factually "interrelated," Defendants' successful defense on Plaintiffs' groundless DTPA claim is based on the statute itself, which does not authorize a DTPA claim on a transaction or set of transactions "involving total consideration by the consumer of more than $500,000." *See* TEX. BUS. & COMM. CODE § 17.49(g). Defendants from the time that suit was served on them well knew and had proof in their contract that the consideration paid to them in the transaction exceeded $500,000. One or two requests for admissions of fact served on Plaintiffs should have solidified the proof of this dispositive fact. The simple and straightforward strength of Defendants' right to judgment on Plaintiffs' DTPA claim is borne out by the brevity of argument Defendants make in their briefs for summary judgment: Total expends three short paragraphs to argue a persuasive dispositive basis for dismissal.[25] Axon argues the "large transaction exemption" in two paragraphs spread over a page and a half.[26] This is the simplest of all issues in the case and was readily disposed of by Defendants.

Defendants' assertions that it is "impossible" to segregate the time that they reasonably expended and fees they reasonably

---

[25] Document No. 75 at 17.

[26] Document No. 74 at 10-11.

incurred in defending this one groundless claim are without merit. Moreover, to award to Defendants all attorneys' fees incurred during the course of the entire litigation, which involved numerous other fact intensive issues wholly unrelated to the groundless DTPA claim, would constitute a distorted application of the specific fee shifting proviso set forth in the DTPA.  Rather than to deny in their entirety Defendants' overreaching fee claims, however, the Court based on its experience finds that from start to finish neither Defendant should reasonably have expended more than 60 hours of time on this simple issue so readily disposed of as a matter of law.  Sixty hours of time spent on Plaintiffs' groundless DTPA claim would include slices of time expended--on that discrete subject--in client consultations, preparing for and attending a scheduling conference, drafting of pleadings, maybe a handful of questions on a deposition or two, or maybe a couple of interrogatories or requests for admission, studying sections 17.49(g) and 17.50(c) of the DTPA, drafting two or three paragraphs for inclusion in a motion for summary judgment, plus a small portion of conference and administrative time spread across the pendency of the case.  Thus, one can reasonably segregate the small amount of time that competent counsel--as we have here--would spend in defending a groundless claim based on a statute, which itself unambiguously excludes the claim.

Axon's counsel, who offices in Texarkana, Texas, and who affirms that he has been a Texas lawyer for more than 30 years, has made proof that his agreed hourly billing rate was $185 for attorney time and $50 per hour for paralegal time on this case, which the Court finds is reasonable. Total's lawyer, a partner in the Houston office of Locke Lord L.L.P., affirms that he has been a Texas lawyer for more than 22 years, but does not state what hourly fees are usual and customary or what rates his client has agreed to pay to him or his firm either for lawyers or paralegals. Based upon the undersigned Judge's experience of more than 50 years as a lawyer/judge in Houston, the Court finds that in Houston a blended hourly rate of $300 per hour is reasonable and customary for defending a suit of this type. Defendant Axon is therefore awarded $11,100 (60 hours x $185), and Defendant Total is awarded $18,000 (60 hours x $300), for reasonable and necessary attorneys' fees incurred in successfully defending Plaintiffs' groundless DTPA claim.

## IV. Order

For the reasons set forth above, it is hereby

ORDERED that Defendant Axon Well Intervention Products, Inc.'s Motion for Summary Judgment (Document No. 74), and Defendant Total Equipment and Service, Inc.'s Motion for Summary Judgment (Document No. 75) are GRANTED and Plaintiffs Haynesville Shale Rentals, LLC's

and Elite Coil Tubing Solutions, LLC's claims against Defendants are DISMISSED with prejudice. It is further

ORDERED that Defendant Total Equipment and Service, Inc. shall have and recover of and from Plaintiffs Haynesville Shale Rentals, LLC and Elite Coil Tubing Solutions, LLC, jointly and severally, the sum of $18,000.00 for reasonable and necessary attorneys' fees incurred in successfully defending Plaintiffs' groundless Texas Deceptive Trade Practices Act claim; and Defendant Axon Well Intervention Products, Inc. shall have and recover of and from Plaintiffs Haynesville Shale Rentals, LLC and Elite Coil Tubing Solutions, LLC, jointly and severally, the sum of $11,100.00 for reasonable and necessary attorneys' fees incurred in successfully defending Plaintiffs' groundless Texas Deceptive Trade Practices Act claim.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 8th day of April, 2014.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE